IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW-JERSEY,

AT OCTOBER TERM, 1850.

---

### THE AMERICAN PRINT WORKS v. LAWRENCE.
### HALE v. LAWRENCE.

1. When a particular officer is authorized to destroy buildings where he shall judge it necessary to prevent the spread of a conflagration, by a statute which provides compensation for the buildings destroyed, it is a sufficient justification for the destruction of goods contained in such building, for which no compensation is provided, to allege that the building was destroyed according to such authority, and that it was absolutely necessary for the purpose of averting the conflagration, to destroy the building, without waiting to remove the goods.

2. A person who is a citizen, resident, and property owner in a city, may justify the destruction of buildings and goods on the ground of inevitable necessity to prevent the spread of a conflagration in the city, without alleging that the property in immediate and imminent peril was his own property.

---

This was an action of trespass, brought in this court, against the defendant for destroying the goods of the plaintiff, by blowing up the same with gunpowder. The substantial part of the declaration is given in the former report of this case.* The special plea, which this court adjudged sufficient, having been

*Vol. 1, 248.

held bad by the Court of Errors,* and the defendant having obtained leave to plead anew, pleaded the general issue and the two following special pleas in justification.

And for further plea in this behalf, by leave of the court here, &c., the said defendant, as to by gunpowder burning and destroying the said goods, wares, and merchandises, in the said declaration mentioned, says, that the said plaintiff, his action thereof against him, ought not to have or maintain, because, he says, that at the time of the committing the said supposed trespass in the said plaintiff's declaration mentioned, by him, the said defendant, to wit, on the 17th day of December, 1835, *the citizens of the city of New York, in the state of New York, were, and for a long time previous thereto, to wit, from the year 1686, had been a body politic and corporate, by the name and style of "the Mayor, Aldermen and Commonalty of the City of New York," and from thence hitherto have continued and remained, and still continue and remain, such body politic and corporate as aforesaid, by the name and style aforesaid.*

*And the said defendant further says, that there have been at all times, from the year last aforesaid, until and at the time of the committing of the said supposed trespass, certain municipal officers and magistrates in the said city of New York, called the mayor and the aldermen, charged and invested with judicial, administrative and executive powers and duties, for the government of the said city, and the protection of the citizens and inhabitants thereof, and the estate and property therein.*

*And the defendant further says, that heretofore, to wit, on the 9th day of April, in the year 1813, the people of the state of New York, by their legislature, did pass an act, among other things, regulating the destruction of buildings in the said city of New York, whenever such destruction should become necessary to prevent the spread of a conflagration in the said city, and to save other buildings and property therein from taking fire, and being consumed thereby, entitled "An act to reduce several laws, relating par-*

* Vol. 1, 714.

*ticularly to the city of New York, into one act," in which said act it was provided and enacted, that when any buildings in the city of New York should be on fire, it should be lawful for the mayor, or in his absence the recorder of the city, with the consent and concurrence of any two of the aldermen thereof, or for any three of the aldermen, to direct and order the same, or any other building which they should deem hazardous and likely to take fire, or to convey the fire to other buildings, to be pulled down or destroyed. And that, upon the application of any person interested in such buildings so pulled down or destroyed, to the mayor or recorder, or any two aldermen, it should be their duty to issue a precept for a jury to inquire of and assess the damages which the owners of such building, and all persons having an estate or interest therein, have sustained by the pulling down or destroying thereof. And, after providing the manner of conducting, executing, and returning of the said inquiry and assessment, and the confirmation thereof, the act aforesaid further enacts, that the sums so assessed by the said jury shall be paid by the said mayor, aldermen, and commonalty to the respective persons in whose favor the jury shall have assessed the same, in full satisfaction of all demands of such persons, respectively, by reason of the pulling down or destroying such building. And the said defendant says, that the said provisions of the aforesaid act, from thence hitherto, have remained, and still remain in full force and effect, and unrepealed.*

*And that the said defendant further says, that at the time of committing of the said supposed trespass in the said plaintiff's declaration mentioned, by him, the said defendant, to wit,* on the 17th day of December, 1835, the said city of New York, in the said plaintiff's declaration mentioned, and in which the said supposed trespass is therein alleged to have been committed by the said defendant, was densely populated, and compactly and closely built up with stores, dwelling houses, and other buildings, near to and adjoining each other, which were then used and occupied by the respective owners or tenants thereof for the residence of their families, the storing

of goods, wares, and merchandises, and for other lawful purposes. And this defendant further saith, that on the day and year last aforesaid, and before the committing of the said supposed trespass in the said plaintiff's declaration mentioned, a fire had broken out in the said city, and for some time had been, and was then raging with great violence, and had burnt down and destroyed a great number of the said stores, dwelling houses, and other buildings, and threatened destruction to the said city, or to a great part thereof, and had actually communicated and set fire to a large number of said stores, to wit, to sixteen stores, including stores known and distinguished as number forty-four and number forty-six, situated on a public street in the said city called Exchange Place, in each and all of which said last mentioned stores the said conflagration, at the time of the committing of the said supposed trespass, was raging with great violence, and threatened the destruction of adjoining buildings, and of a very large and valuable part of the said city.

And the said defendant further says, that near to and in the vicinity of the said stores, so as aforesaid on fire, there were certain other buildings, commonly called stores, known as numbers 48, 50, and 52, on the said street called Exchange Place, which, from their relative position in regard to the said stores so as aforesaid on fire, were peculiarly exposed to the danger of being set on fire, and were likely and liable, at any moment, to be ignited, and thereby to extend and communicate the fire to other and numerous and valuable buildings and stores, and to cause the total destruction thereof, with their contents, and to cause the destruction by the said conflagration of a large and valuable portion of the said city, and of the dwelling houses and other buildings therein.

And the said defendant avers, that but for the acts and conduct of the said defendant, herein after mentioned, the said stores, above particularly mentioned or referred to as peculiarly exposed to danger, would inevitably and within a few moments have taken fire from the said stores or buildings then already on fire as aforesaid, and would have communicated the fire to other stores and buildings in the vicinity thereof, and

would thereby have been the means of consuming and destroying by fire many valuable stores and buildings, and of consuming and destroying by fire a very large and valuable portion of the said city, and of the stores and dwellings therein, together with the goods, wares, and merchandises, and other property in such stores, dwelling houses, and building there being.

And the said defendant further says, that he was, at the time last aforesaid, and for a long time previous thereto had been and still is a resident and citizen of the said city of New York, in the state of New York, and the owner of valuable buildings and property real and personal, in the said city, and was present at and during the time of the aforesaid fire, and, as such resident citizen and owner, aiding, advising, and assisting in preventing the spread of the said fire, and in the protection of the buildings and property in the said city from destruction thereby; and this defendant, being so present at the said fire, had reason to believe, and did believe, that the said stores or buildings, so herein before particularly mentioned or referred to as peculiarly exposed to the said fire, would immediately and inevitably take fire and be burned up, with their contents, notwithstanding every effort that was or could be made to save the same from destruction, and would communicate the flames to adjoining buildings, and cause the destruction of a large part of the said city as aforesaid, unless the said stores or buildings were immediately and without loss of time destroyed, by blowing up the same with gunpowder or in some other way instantly demolishing the same, so as to prevent the further extension of the said conflagration.

And the said defendant further says, that to prevent the further spreading of the said conflagration, and the destruction of a large portion of the aforesaid city, and of the buildings and property therein as aforesaid, the immediate destruction of the said stores or buildings, numbers 48 and 52, so herein particularly referred to as aforesaid, without waiting to remove thereout the goods, wares, and merchandises, if any then being therein, was absolutely necessary; and without such immediate destruction of the said stores or buildings the said fire

and conflagration could not and would not have been arrest-
ed, but would have extended itself, and have consumed and
destroyed a large and valuable portion of the said city as afore-
said; and for this reason and with this purpose and intent, and
for none other, the said defendant, on the day and year afore-
said, did advise, cause, and procure the said stores or buildings,
numbers 48 and 52, to be blown up with gunpowder and de-
stroyed, thereby necessarily and unavoidably destroying the
said store or building, number 50, as it was lawful for him to
do, for the cause aforesaid.

*And the said defendant further says, that on the day and year
last aforesaid, at the place aforesaid, he was the mayor of the
said city of New York, and that Edward Taylor and Egbert
Benson, also citizens of the said city, were then respectively alder-
men of said city, and that they, the said defendant being such
mayor, and the said Edward Taylor and Egbert Benson, being
such aldermen, were, and each of them was present when the
buildings aforesaid were on fire as aforesaid, and did deem
the said stores or buildings, numbers 48 and 52, hazardous
and likely to take fire, and to convey the fire to other build-
ings.*

*And the said defendant, and the said Edward Taylor and
Egbert Benson, aldermen as aforesaid, in accordance with the
aforesaid act of the legislature of the state of New York, regu-
lating the destruction of buildings in the said city, deemed
hazardous and likely to take fire as aforesaid, when such
destruction was necessary as aforesaid, consented and concurred
together in advising, causing, and procuring the blowing up
and destruction of the said stores or buildings, numbers 48 and
52.*

And the said defendant further says, the said goods, wares,
and merchandises, in the introductory part of this plea men-
tioned, were in the aforesaid buildings or stores, numbers 48,
50, and 52, so as aforesaid blown up with gunpowder and de-
stroyed as aforesaid, at the said time when the said defendant
advised, caused, and procured the same to be blown up and
destroyed as aforesaid, whereby the said goods, wares, and
merchandises were also consumed, blown up, and destroyed.

And the said defendant further says, that at the time of the blowing up and destruction of the said last mentioned buildings or stores, the said goods, wares, and merchandises could not have been removed or saved before the said stores or buildings would have taken fire, and endangered and communicated the flames to other buildings, and thereby consumed a great and valuable portion of the aforesaid city, and of the buildings and property of the citizens or inhabitants thereof. Wherefore the said defendant says, that for the cause aforesaid, and in the manner and on the day and year aforesaid, and to prevent the spreading of the said conflagration, and to save a large and valuable portion of the aforesaid city, and the buildings and property of the citizens therein, from being burned up and destroyed, he did necessarily (doing as little injury or damage as it was possible for him to do) blow up by gunpowder, burn and destroy, the said stores or buildings, numbers 48, 50, and 52, and, in so doing, did necessarily and unavoidably blow up by gunpowder, burn and destroy, the said goods, wares and merchandises, in the introductory part of this plea and in the said plaintiff's declaration mentioned, as it was lawful and necessary for him to do, for the cause aforesaid, to wit, on the day and year and at the place aforesaid, which is the same supposed trespass in the introductory part of this plea mentioned, and whereof the said plaintiffs have above thereof complained against the said defendant, and this he is ready to verify. Wherefore he prays judgment if the said plaintiffs ought to have or maintain their aforesaid action thereof against him, &c.

The second special plea was the same as the first, omitting the parts printed in italics.

To these pleas the plaintiff replied as follows :

Replication to first special plea.

And the said plaintiffs, as to the plea of the said defendant by him secondly above pleaded, say, that they, the said plaintiffs, ought not to be barred, &c., because they say, that the said plaintiffs had not any estate or interest in the said buildings or stores, in the said plea mentioned as having been blown up by gunpowder, burned and destroyed, by the said defend-

ant, at the time the same were so blown up by gunpowder, burned and destroyed, as aforesaid ; and that to prevent the further spreading of the said conflagration in that plea mentioned, and the destruction of a large portion of the aforesaid city, and of the buildings and property therein as aforesaid, the immediate destruction of the goods, wares, and merchandises in the said plaintiff's declaration mentioned was not absolutely necessary ; nor would it have been impossible, without such immediate destruction of the said goods, wares, and merchandises, to have arrested the said fire and conflagration : and of this they put themselves upon the country.

Replication to second special plea.

And the said plaintiffs, as to the plea of the said defendant, by him thirdly above pleaded, say, that they, the said plaintiffs, ought not to be barred, &c., because they, the said plaintiffs, say, that to prevent the further spreading of the said conflagration in that plea mentioned, and the destruction of a large portion of the aforesaid city, and the buildings and property therein as aforesaid, the immediate destruction of the goods, wares and merchandises in the said plaintiffs' declaration mentioned was not absolutely necessary, nor would it have been impossible, without such immediate destruction of the said goods, wares, and merchandises, to have arrested the said fire. and conflagration : and of this they put themselves upon the country.

To these replications the defendant demurred, and added special causes of demurrer, as follows : To the replication to the first plea—1 and 2, that it tendered useless and immaterial issues ; 3, that it was double, multifarious, and incapable of trial ; 4, that it was argumentative ; 5, that it did not confess or deny the material allegations of the plea ; 6, that the matters therein were not so pleaded as to be capable of trial by the country ; 7, that the same conclude to the country, and not with a verification. To the replication to the second plea —1, that it is argumentative ; 2, that it is double and argumentative, and tenders an immaterial issue ; (3), that it is double ; (4), that it is argumentative, and does not deny facts, but

supposed inferences from them; 4, that it concludes to the country, instead of a verification.

To these demurrers there was filed the common joinder.

This issue at law was argued before the CHIEF JUSTICE and Justices NEVIUS and OGDEN.

*William Kent*, for plaintiffs.

*B. Williamson* and *Hornblower*, for defendants.

The CHIEF JUSTICE. The question presented by the demurrer in this cause is not without embarrassment, arising, perhaps, not so much from the intrinsic difficulty of the question itself, as from the decisions which have been already made affecting it.

It is the undoubted duty of this court to give effect to the decision made in this cause by the Court of Errors. It is a duty equally clear, not to come in conflict with the decisions of the courts of a sister state on a question arising upon the construction of their own laws and the effect and operation of their own constitution. The plea heretofore pleaded in this case, and which was adjudged by the Court of Errors to be defective in substance, or any other plea presenting substantially the same defence, cannot be sustained by this court. The replication demurred to is unquestionably defective. The only question is, whether the plea now pleaded does present substantially the same defence with that already overruled by the Court of Errors, or a defence inconsistent with the principles adopted by that court.

If, by the decision of the Court of Errors, the statute of the state of New York, upon which the defendant relies in his plea, was adjudged null and void, as a violation of the constitution of that state, then unquestionably those pleas are bad, and must be overruled. But this clearly was not the view of the learned judge by whom the opinion of that court was pronounced. He held, in opposition to the opinion of the court below, and to what was understood to be the decisions of the courts of New York, that the statute contained a grant of power; that the property destroyed by authority of the statute

was destroyed for public use; and that if it authorized the destruction of any property without providing compensation, it authorized the taking of private property for public use without compensation, and would therefore be unconstitutional and void. But he expressly held that the statute did not authorize the destruction of 'goods, but only the destruction of buildings, for which compensation had been provided by the statute. The statute, therefore, was not regarded as unconstitutional. If a different opinion was entertained by any member of the court, if it was considered that the statute did authorize a destruction of goods without compensation, and consequently was so far void, the objection could affect the statute only *pro tanto*. So far as it provided compensation for property taken, the statute was constitutional and valid.

The defendant, therefore, in the destruction of the buildings, (which in its consequences involved the destruction of the plaintiff's goods) acted under the authority of a constitutional and valid law. The real ground of complaint is, that he exceeded the authority conferred by the statute, and thereby became a trespasser; that he not only destroyed buildings, which he might lawfully do, but also the plaintiff's goods, which were in the building, and which the statute gave him no authority to destroy.

The plea under consideration in the Court of Errors, and which was adjudged defective, did not aver that there was *any necessity* for the destruction of the goods. For all that appeared upon the plea, they might have been removed before the building was destroyed. The utmost that could be assumed was, that such necessity might be inferred. " The very effort and force (said the learned judge, in delivering the opinion,) required to destroy personal property, which could be saved from conflagration by any possibility, would be sufficient to remove it, and save it from destruction." This defect the pleader has now attempted to remedy, and has averred that, to prevent the spread of the conflagration and the destruction of a large portion of the city, it was necessary to destroy the buildings, without waiting to remove the plaintiff's goods; and that the goods were thereby necessarily destroyed. He

relies obviously, for his justification, not upon the *common law right of necessity*, but upon a *necessity* created by the exigency of the statute, and growing out of the performance of his duty as a public officer.

The counsel of the plaintiff insists that the statute not only constitutes in itself no justification for the act of the defendant, but that it can in no wise contribute to his defence. That although he acted in the discharge of his duty as a public officer, in good faith upon a sudden and alarming emergency, under the sanction of a constitutional and valid law, and in the execution of that law, all this is irrelevant and immaterial to his defence. He insists that the defendant is thrown back for his justification exclusively upon the common law doctrine of necessity; that he must show, in justification, that it was absolutely necessary to destroy the plaintiff's goods to prevent the spread of the conflagration, and that the progress of the flames could not by possibility have been otherwise arrested. By his argument he carries the doctrine much farther, and insists that even this necessity will not avail the defendant, unless he shows that the act was done to protect his own property, not the property of others alone, from destruction. This position is most clearly erroneous. There is no such limitation of the common law right of necessity. If there be, and such is announced as the rule of law, there would be an end to all efficient efforts to arrest the progress of any conflagration. No men but those whose property was immediately in peril, and that the most imminent, would incur the hazard of an effort to check the flames.

The position of the counsel of the defence, as disclosed by his pleading, is that the statute of the state of New York, under which the defendant acted, was a constitutional and valid law; that it conferred upon the defendant an unquestionable right to destroy the buildings to arrest the progress of the flames; that for this purpose these buildings were destroyed by the defendant in the discharge of his duty as a public officer; that in the discharge of that duty, the exigency arose which rendered the destruction of the plaintiff's goods inevitable, in order to arrest the progress of the conflagration.

I incline to think the defendant is right in his construction of the law. It is certainly not without its difficulties. But it is the only view which will enable us at once to give effect to the judgment of the superior tribunal, and at the same time prevent our coming into direct conflict with the express and repeated adjudications of the courts of a sister state, upon the construction of their own statute. This result cannot be too strongly deprecated. Aside from all considerations of courtesy, its evil influences upon the administration of justice and the rights of parties litigant are apparent.

I am of opinion that the demurrer should be sustained, and the plaintiff's replication overruled, with costs.

The same order must be made in the case of *Hale* v. *Lawrence*, upon the like pleadings.

OGDEN, J., concurred with the Chief Justice.

NEVIUS, J. These causes involve the same questions, and may be considered and treated as one and the same, for the judgment of the court must be the same in each. They have, on a former occasion, been presented to us on demurrers to the defendants' pleas, which demurrers were overruled here ; but on writs of error the judgment of this court was reversed, and the demurrers sustained by the court of last resort. The record being remitted to this court, the defendant obtained liberty to file new pleas, to which the plaintiffs have filed their replications. To these replications there are demurrers and joinders. The counsel for the respective parties have presented their arguments in printed briefs, by which it appears that the defendant has been driven to defend the legal validity of his pleas on the principle, that on demurrer the judgment of the court must be against the party who files the first plea defective in substance.

In the examination of this case, (for I will speak of them as one) it will be proper to inquire what was the former plea filed in the cause, and what points or principles were settled by the Court of Errors on the demurrer to that plea. The settlement of these will aid us in the decision we are now called to make.

The action is in trespass, and charges that the defendant, on the 17th of December, 1835, at, &c., with force, &c., did blow up with gunpowder a large quantity of goods and merchandise of the plaintiff, of the value, &c., whereby, &c.

To this declaration the defendant pleaded, by way of justification of the act complained of, in substance as follows: that he was mayor of the city of New York at the time of the alleged trespass; that New York was a political corporation; that, by a law of the state, he, as mayor, with the consent of two aldermen, was authorized (under certain circumstances mentioned in the plea) to pull down and destroy such buildings as he might deem hazardous and like to take fire, and convey the fire to other buildings; that, in the lawful exercise of this authority, he caused and procured certain buildings to be *blown* up and destroyed; that the goods and merchandise of the plaintiff, said to be blown up and destroyed, were in said buildings at the time, and for that reason they were blown and destroyed by him, as it was lawful for him to do. I state only the substance of this plea; it will be found in form and in full in 1 *Zab. R.* 248.

The validity of this plea, as a legal justification of the trespass, came directly before the Court of Errors of this state, on a general demurrer, and that court adjudged the plea bad, and no lawful defence to the action. The reason and grounds upon which this judgment was based are to be found in the opinion expressed by that court at the time the same was rendered. But one opinion in support of that judgment was read, which will be found at length in the volume above cited, page 727, and in that opinion a majority of the court concurred. We are, therefore, to resort to that opinion to ascertain the principles and doctrines held and declared by that court, so far as the same are applicable to the questions now before us.

The principles clearly expressed by, or fairly deducible from that opinion are—

1st. That the law of New York, which the defendant pleaded in justification of the trespass charged, was a grant of eminent domain, authorizing him, as mayor, in certain cases, and at his discretion, with the consent of two aldermen, to pull

down and destroy certain buildings, which, in cases of fire, he might deem hazardous and like to take fire, and extend the fire to other buildings.

2d. That this law was not a mere regulation of a pre-existing natural right, 'but a grant of a new power, to take or destroy private property for public use or public safety.

3d. That it was a constitutional law, so far as it extended to the destruction of buildings, providing compensation to the owners thereof.

4th. That it did not extend to, nor authorize the destruction of personal goods ; or, if it could be so construed, it was so far unconstitutional and void, as it made no provision to compensate the owners of goods so destroyed.

5th. That to a charge for blowing up and destroying personal goods by a direct act of violence and force, the defendant could not plead this act in justification.

6th. That the lawful destruction of the building by the authority of this act was no justification for the destruction of the goods, when both were destroyed by one and the same forcible act of trespass.

7th. That the statute confers no authority, either in express terms or by necessary implication, to destroy goods, and therefore could not be pleaded in justification.

These are as many of the principles settled by the Court of Errors as it is necessary, for our present purpose, to refer to. The reasons assigned in support of them will be found in the report of the case, 1 *Zab. R.* 727.

We will now examine the present plea, and see wherein it differs from the former, and how far it is, or can be sustained by the judgment and opinion of the Court of Errors, as above mentioned.

The plea now under consideration alleges, that at the time of the supposed trespass, to wit, the 17th of December, 1835. the city of New York was a municipal corporation, and had certain officers, such as mayor, &c., invested with judicial and executive powers. It then sets forth the same statute of the state of New York as was set forth in the former plea, investing the mayor, &c., with a discretionary power to destroy

buildings in case of a fire. It further alleges that, at the time of the trespass, New York was a populous city; that the defendant was mayor, and owner of a large number of buildings in it; that there was a fire raging in said city, threatening destruction to a large portion of it; that the defendant was present, and had *reason to believe,* and did believe, that certain buildings were hazardous and likely to take fire, and convey the fire to other buildings, unless immediately blown up; that, to stop the fire, and prevent the destruction of a large portion of the city, the *immediate destruction* of these buildings, without waiting to remove the goods therefrom, was absolutely necessary; that two aldermen were also present at the fire, and they also deemed said buildings hazardous and like to take fire, and, with their consent, the defendant advised and procured said buildings to be blown up; that the plaintiff's goods were in said buildings, and could not have been removed and saved before said buildings would have taken fire, and communicated the flames, &c.; whereupon, &c.

This plea is substantially the same as the former plea; its substance is not changed by the different language in which it is clothed, nor by the words " necessary," " absolutely necessary; " " that the goods could not be removed and saved," &c. It is not a plea of justification by virtue of the natural right, arising from the common law right of inevitable and overwhelming necessity. It is a plea of justification by virtue of the statute; and as that plea has already been overruled, I cannot but think it somewhat presumptuous in the defendant to put it again on the files of this court. I say it is, to all intents, a plea of justification under the statute, unless we reject the whole introductory part of it, as immaterial and mere surplusage. He alleges that he was mayor of the city. Suppose he was. As mayor, he has no more authority, without the aid of the statute, to blow up a building than any private citizen had. He alleges that he deemed and believed certain buildings to be hazardous, and therefore blew them up. Suppose this true, but for the authority of the statute his own discretion could not be substituted in the place of proof of such necessity for the trespass, even if the suit had been brought for the de-

struction of the building. He alleges that the two aldermen entertained the same belief, and concurred in the act of blowing up the buildings. Of what avail is their belief or concurrence in the act, unless made available by the terms of the statute? It may be true that the defendant and his aldermen believed the buildings hazardous, and their immediate destruction necessary to stop the fire, and yet the fact may have been far different. Had he pleaded common law necessity as a defence, it would not have done for him to allege that he *deemed* and *believed* it necessary to destroy the buildings or the goods; the law would have required a direct averment that it *was* necessary. His belief in that case would be no answer to the charge. But it may be said, that there is a direct averment in this plea, " that to stop the fire, the immediate destruction of the buildings, without waiting to remove the goods, was absolutely necessary." This averment must be taken in connection with the former, and then it becomes qualified to an averment, that in the defendant's belief the immediate destruction of the buildings, without waiting to remove the goods, was absolutely necessary; and that is no legal answer to the charge in this declaration. And the same remark will apply to the last averment in the plea, to wit, " that the plaintiff's goods were in said buildings, and could not have been removed and saved before said buildings would have taken fire and communicated the flames," &c. As there is no averment of the absolute necessity for blowing up the buildings, but only the belief of the defendant of such necessity, the last averment touching the destruction of the goods must be taken in the same qualified sense.

I repeat, therefore, that this plea is the same in substance as the one already overruled, and the Court of Errors have declared that such plea is bad. They have adjudged that, to a charge for blowing up and destroying goods by a direct act of violence, the defendant cannot plead as a justification the statute which authorized him, as a public officer, to blow up and destroy a building. That the lawful destruction of a building by the authority of the statute was no justification for de-

stroying personal property in it, if both were destroyed by the same act of violence.

For these reasons, I think this plea no answer to the declaration and no defence to the action, and is in direct contravention of the decision of the Court of Errors, and should have been stricken out on motion, if such motion had been made.

But if we are at liberty to consider the whole introductory part of the plea as immaterial, and are at liberty to reject it as surplusage, then its true meaning is, " that the defendant lawfully destroyed a building (whether by the authority of the statute or the law of necessity matters not) which contained the plaintiff's goods, and that there was not time to remove the goods, and that therefore they were destroyed. The plaintiff does not complain of a consequential loss of his goods arising from the destruction of a building, but he charges the defendant with a direct act of trespass committed upon the goods themselves. This allegation ought to have been admitted or denied by the plea. The defendant has done neither in express terms, but he answers, that in blowing up a building, which he had a lawful right to blow up, the goods being in such building, and not removable in time to stop a fire, were necessarily blown up. This is no answer to the charge. If he blew up the goods, which he does not deny, and meant to justify such destruction on the ground of necessity, he should have so distinctly averred. Suppose an action of trespass had been brought against him for blowing up the building, it would have been a lame and insufficient answer for him to say, that in the exercise of a lawful right to blow up and destroy the goods it contained, to stop a fire or a pestilence, he necessarily and unavoidably destroyed the building : and yet such plea would be equally defensible with this. But it is unnecessary to dwell longer on this part of this case. I consider the plea bad in substance, as well upon the rules of practice as upon the decision of the Court of Errors, and that judgment on this demurrer ought to be rendered for the plaintiff.

But if the plea could be treated and considered as a plea of justification under the common law right of inevitable necessity, and I am free to admit that such a necessity might exist

for the destruction not only of buildings but of personal goods, then I am of opinion that the replication is a good answer to the plea. In that case we must strip the plea of all that part which is set forth as inducement to or excuse for the act complained of, and reject it as mere surplusage. Then to the charge of trespass in blowing up the goods, the plea will be, "that the goods were in a certain building, the immediate destruction of which was necessary to stop a conflagration in a populous city; that the goods would not be removed in time to effect that object; that the defendant, compelled by such necessity, destroyed the building, and that the goods were consequently and unavoidedly destroyed.

If the facts so averred constitute a legal defence to the charge of trespass, and the plaintiff means to controvert them, what reply ought he to make? I apprehend the very one he has made, and no other. In his replication he alleges "that the immediate destruction of the goods was not absolutely necessary to stop the conflagration, nor would it have been impossible to arrest the fire without such immediate destruction of the goods." Had he replied that the immediate destruction of the building was not necessary to arrest the fire, it would have been a departure in pleading, and tendered an immaterial issue, for the defendant is not charged with a trespass in blowing up the building. Nor would it have been an answer to the plea, for that does not aver "that it was necessary to blow up the buildings," but only that the defendant *deemed and believed* it necessary, which the plaintiff could not deny.

Again, the destruction of the house may have been lawful, and the destruction of the goods unlawful and a trespass. The real point in the plea is, that there was no time to remove the goods, or that the goods could not be removed in time to stop the fire, and were therefore blown up. To this point the replication gives a direct denial, and puts in issue the very fact upon which the defendant relies in justification of the trespass, and which the plaintiff means, and has a right to controvert, and very properly concludes to the country.

It is, however, argued against this replication, that it avers

facts, the contrary of which is not affirmed in the plea, such as " that the plaintiff had no estate in the building blown up," and " that the immediate destruction of the goods was not absolutely necessary."

As to the first of these averments, it is entirely immaterial, and therefore not a cause of demurrer. *Steph. on Pleadings* 467. And the plaintiff may well be excused for alleging it, when we look at the anomalous character of the plea, reciting so much of a public statute in justification of the trespass as may avail him, and omitting that part which provides compensation to all persons having an estate or interest in the building destroyed.

In regard to the second, I remark, if the plea did not substantially aver the necessity of destroying the goods to arrest a conflagration, then it is no answer to the declaration. If it did contain substantially such averment, then it is fairly met by the replication, and in either case the judgment on this demurrer should be for the plaintiff.

Another cause of demurrer assigned to this replication is, that it is multifarious and double in meaning.

1st. Because it avers that the plaintiff had no *interest* in the building destroyed :" (the averment is, that he had no *estate* or *interest* in the building.)

" 2d. Because it avers that the immediate destruction of the goods was not necessary."

" 3d. That it would not have been impossible without such destruction to have arrested the fire."

The answer to this is plain. The first of these averments is as immaterial as the averment in the plea, that the defendant owned many buildings in the city of New York. The third averment is only a corollary to the second, and they are to be taken together, making in fact but one material allegation. There is no multifariousness here.

Another cause of demurrer assigned is, that the replication is argumentative in this, " that instead of denying the necessity of destroying the building, it denies the necessity of destroying the goods." This objection, I think, has been already sufficiently answered ; but I may add here that it illy becomes the

defendant to make it, after signing his own plea, where, to a charge for destroying goods, he pleads that he was justified in destroying a building in which the goods were. If the replication is liable to this objection, the plea is equally so.

There is no other cause of demurrer assigned that calls for further notice, and what I have said in regard to the first special plea, and the replication thereto, will apply to the second special plea and its replication.

I think the judgment should be for the plaintiff.

Judgment for the defendant on the demurrer.